UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

EMPOWER OVERSIGHT )
WHISTLEBLOWERS & RESEARCH, )
601 King Street, Suite 200 )
Alexandria, VA 22313-3151 )
                                  Plaintiff, )
                                  ) Case No. _____
v. )
 )
U.S. SECURITIES AND EXCHANGE )
COMMISSION, )
100 F Street NE )
Washington, DC 20549 )
 )
                                Defendant. )

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1. Plaintiff Empower Oversight Whistleblowers & Research (hereinafter "Empower Oversight") brings this action against Defendant U.S. Securities and Exchange Commission ("SEC") to compel compliance with the Freedom of Information Act, 5 U.S.C. § 552 (the "FOIA"), including obtaining access to records maintained by the SEC.

2. The records at issue in this case concern potential conflicts of interest by former high-level officials at the SEC relating to cryptocurrencies. In particular, the circumstances of certain former SEC officials' declarations of whether particular cryptocurrencies constitute securities—and thus are subject to SEC regulation—raise significant questions regarding potential conflicts of interest.

3. For example, public reports indicate that William Hinman, previously a partner at law firm Simpson Thacher, worked as the Director of the Division of Corporate Finance at the SEC from May 2017 to December 2020. *See William Hinman Named Director of Division of*

1

*Corporation Finance*, U.S. SEC (May 9, 2017), *available at* https://www.sec.gov/news/press-release/2017-97. Hinman reportedly continued to receive millions of dollars from Simpson Thacher while at the SEC. *See, e.g.*, Jack Newsham, *A top SEC official was receiving a $1.6 million law-firm pension from Simpson Thacher that was 7 times his government salary*, BUS. INSIDER (Jan. 29, 2021), https://www.businessinsider.com/sec-simpson-partner-pay-biden-golden-parachutes-2021-1.

4. Simpson Thacher is a member of the enterprise Ethereum Alliance, an industry organization aiming to "drive the use of Enterprise Etherum." *See About*, ENTER. ETHERUM ALL. (last accessed Dec. 1, 2021), *available at* https://entethalliance.org/about/. In a June 2018 speech in his official capacity as an SEC official, Hinman declared that the Ethereum cryptocurrency, Ether, was not a security. *See* Speech, *Digital Asset Transactions: When Howey Met Gary (Plastic)*, U.S. SECS. & EXCH. COMM'N (June 14, 2018), https://www.sec.gov/news/speech/speech-hinman-061418. After his declaration, Ether's value rose significantly. Aul Vigna, *Crypto Market Rallies on SEC Official's Ether Stance*, WALL ST. J. (June 14, 2018), *available at* https://www.wsj.com/articles/crypto-market-rallies-on-secs-officials-ether-stance-1529007646. After departing the SEC in late 2020, Hinman rejoined Simpson Thacher as a partner. *See Former SEC Division of Corporation Finance Director Bill Hinman Returns to Simpson Thacher*, Simpson Thacher & Bartlett LLP (Jan. 12, 2021), *available at* https://www.stblaw.com/docs/default-source/related-link-pdfs/bill-hinman-rejoins-simpson-thacher_2021.pdf.

5. That same month, SEC filed a lawsuit against one of Ethereum's rivals, Ripple, alleging that its XRP cryptocurrency was a security, such that the offering and sales of XRP was in violation of federal securities law. Press Release, *SEC Charges Ripple and Two Executives with*

*Conducting $1.3 Billion Unregistered Securities Offering*, U.S. SECS. & EXCH. COMM'N (Dec. 22, 2020), *available at* https://www.sec.gov/news/press-release/2020-338.  The value of XRP fell 25% immediately after the SEC's announcement of the lawsuit.  *See* Bilal Jafar, *XRP Plummets 25% after SEC's $1.3 Billion Lawsuit against Ripple* (Dec. 23, 2020), available at https://www.financemagnates.com/cryptocurrency/news/xrp-plummets-25-after-secs-1-3-billion-lawsuit-against-ripple/.  Shortly after filing the lawsuit, the leader of the SEC Enforcement Division, Marc Berger, left the SEC and joined Hinman as a partner at Simpson Thacher.  Marc P. Berger, *Former Acting Director of the SEC's Enforcement Division, to Join Simpson Thacher*, SIMPSON THACHER & BARTLETT LLP (Apr. 15, 2021), https://www.stblaw.com/docs/default-source/related-link-pdfs/marc-berger-to-join-simpson-thacher_2021.pdf.

6. As another example, former SEC Chairman Jay Clayton publicly stated while at the SEC that Bitcoin was not a security.  *SEC chairman: Cryptocurrencies like bitcoin are not securities*, CNBC (June 6, 2018), https://www.cnbc.com/video/2018/06/06/sec-chairman-cryptocurrencies-like-bitcoin--not-securities.html.  Thereafter, the value of Bitcoin significantly rose.  Olga Kharif & Eric Lam, *Cryptocurrency Rally Builds Steam as Bitcoin Surpasses $7,500*, BLOOMBERG (July 17, 2018), https://www.bloomberg.com/news/articles/2018-07-17/bitcoin-surges-after-breaking-back-through-7-000-level.  Shortly after he left the SEC, Clayton joined One River Asset Management, a cryptocurrency hedge fund that focuses exclusively on Bitcoin and Ether. Emily Graffeo, *Former SEC chair Jay Clayton will advise digital asset hedge fund One River on crypto*, MARKETS INSIDER (Mar. 29, 2021), https://markets.businessinsider.com/news/currencies/bitcoin-hedge-fund-sec-chair-jay-clayton-one-river-crypto-2021-3.

7. It is in the public's interest that the government's regulation of the emerging cryptocurrency market is based on objective legal principles. As a result, potential conflicts of interest in this space are of significant public importance. Accordingly, Empower Oversight filed the FOIA Request described herein.

## JURISDICTION AND VENUE

8. The Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

9. Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(b) and 28 U.S.C. § 1391(e)(1).

## PARTIES

10. Plaintiff Empower Oversight is a nonprofit, nonpartisan educational organization dedicated to enhancing independent oversight of government and corporate wrongdoing. Empower Oversight has its principal place of business located at 601 King Street, Suite 200, Alexandria, VA 22313-3151. Empower Oversight works to help insiders safely and legally report waste, fraud, abuse, corruption, and misconduct to the proper authorities, as well as work to hold authorities accountable to act on such reports.

11. Defendant SEC is a federal administrative agency within the meaning of 5 U.S.C. § 552(f)(1), with its principal place of business located at 100 F Street NE, Washington, DC 20549. Upon information and belief, the SEC has possession, custody, and control of the records, within the meaning of 5 U.S.C. § 552(f)(2), to which Empower Oversight seeks access.

## LEGAL STANDARD

12. FOIA requires a federal administrative agency to promptly make available requested, non-exempt agency records in response to a request that (a) reasonably describes such

records and (b) "is made in accordance with published rules stating the time, place, fees, . . . and procedures to be followed[.]"  5 U.S.C. § 552(a)(3)(A); *see also* 17 C.F.R. § 200.80(b)(3).

13. In making available such records, fees applicable to processing requests shall be limited to reasonable standard charges for document duplication when records are sought by a "representative of the news media," defined as "any person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(ii); *see also* 17 CFR § 200.80(g)(2)(vi). In contrast, other than those requests by representatives of the news media, educational institutions, or noncommercial scientific institutions, the SEC charges fees for processing (*i.e.*, document search and/or review) FOIA requests. 17 C.F.R. § 200.80(g)(3)(ii)(A).

14. FOIA requires an agency to respond to a valid request within twenty (20) days (exempting Saturdays, Sundays, and legal public holidays) (hereinafter "working days") upon receipt of such request, including notifying the requestor immediately of its determination, the reasons therefor, and the right to appeal any adverse determination.  5 U.S.C. § 552(a)(6)(A)(i); *see also* 17 C.F.R. § 200.80(d)(2).

15. In certain circumstances, an agency may instead provide notice to the requester that "unusual circumstances" merit additional time—up to an additional ten (10) working days—to respond to the request.  5 U.S.C. § 552(a)(4)(viii)(II)(aa); *see also* 17 C.F.R. § 200.80(d)(5).  In the event the agency provides notice to the requester of "unusual circumstances," and that it is not able to respond to the records request within the statutory deadline, the agency must provide the requester "an opportunity to arrange with the agency an alternative time frame for processing the request."  5 U.S.C. § 552(a)(6)(B)(ii); *see also* 17 C.F.R. § 200.80(d)(5).

16. If an agency does not respond to a FOIA request by the statutory deadline, the requester is deemed to have exhausted administrative remedies and may immediately pursue judicial review. 5 U.S.C. § 552(a)(6)(C)(i).

17. On August 12, 2021, Empower Oversight submitted to the SEC a FOIA request focused on two areas: (1) Messrs. Hinman, Berger, and Clayton's (herein after "the former officials" or "the officials") communications with potential employers that held financial interests in particular cryptocurrencies that the SEC was evaluating for purposes of federal supervision; and (2) whether the officials sought advice from the SEC's Office of Ethics concerning such communications. *See* Exhibit A.

18. Specifically, Empower Oversight sought access to the following in its August 12, 2021 FOIA request:

   a. All records relating to communications from May of 2017 through December of 2020 between William Hinman and any personnel from Simpson Thacher, including calendar entries, notes, or emails between Mr. Hinman and any email address from the domain "@stblaw.com";

   b. All records relating to communications from May of 2017 through December of 2020 between Mr. Hinman and any personnel from the Enterprise Ethereum Alliance, including calendar entries, notes or emails between Mr. Hinman and any email address from the domain "@entethalliance.org";

   c. All records relating to communications, including calendar entries, notes or emails between Mr. Hinman and any personnel in the SEC's Office of the Ethics Counsel regarding Mr. Hinman's continued payments from Simpson Thacher while employed at SEC, his potential recusals or conflicts related to his prior or future employment at Simpson Thacher, as well as his discussions and negotiations with Simpson Thacher regarding rejoining the firm;

   d. All records relating to communications from May of 2017 through January of 2021 between Marc Berger and any personnel from Simpson Thacher, including calendar entries, notes or emails between Mr. Berger and any email address from the domain "@stblaw.com";

   e. All records relating to communications from May of 2017 through January of 2021 between Mr. Berger and any personnel from the Enterprise Ethereum Alliance,

        including calendar entries, notes or emails between Mr. Berger and any email address from the domain "@entethalliance.org";

    f.  All records relating to communications, including calendar entries, notes, or emails between Mr. Berger and any personnel in the SEC's Office of the Ethics Counsel, regarding Mr. Berger's discussions and negotiations with Simpson Thacher, including all communications regarding potential recusals or conflicts related to his potential employment with Simpson Thacher;

    g.  All records relating to communication from May of 2017 through December of 2020 between Jay Clayton and personnel from One River Asset Management, including calendar entries, notes or emails between Mr. Clayton and any email address from the domain "@oneriveram.com"; and

    h.  All records of communications, including calendar entries, notes or emails between Mr. Clayton and personnel in the SEC's Office of the Ethics Counsel regarding Mr. Clayton's discussions and negotiations with One River Asset Management, including all communications regarding potential recusals or conflicts related to his potential employment with One River Asset Management.

19. On August 13, 2021, the SEC—via eight separate letters corresponding to each request (*i.e.*, items "a" through "h" in the immediately preceding paragraph)—acknowledged receipt of the August 12, 2021 FOIA request, assigned eight tracking numbers to the request matching the eight enumerated items above, *see supra* ¶ 18, and advised that the request "will be assigned to a Research Specialist for processing and you will be notified of findings as soon as possible."[1] *See* Exhibit B.

20. In each letter, without identifying an "unusual circumstance" permitting a 10-day extension of the 20-working day deadline for rendering a "determination" on the August 12, 2021 request, the SEC stated, "If you do not receive a response after thirty business days from when we

---

[1] The eight tracking numbers the SEC assigned to the Requests are as follows: 21-02531-FOIA (*see supra* ¶ 18(a)), 21-05232-FOIA (*see supra* ¶ 18(b)), 21-02533-FOIA (*see supra* ¶ 18(c)), 21-02534-FOIA (*see supra* ¶ 18(d)), 21-02535-FOIA (*see supra* ¶ 18(e)), 21-02536-FOIA (*see supra* ¶ 18(f)), 21-02537-FOIA (*see supra* ¶ 18(g)), 21-02538-FOIA (*see supra* ¶ 18(h)). However, as noted below, *infra* n. 2, tracking numbers 21-02536-FOIA (¶ 18(f)), and 21-02538-FOIA (¶ 18(h)) are not at issue in this lawsuit, and are thus not attached as part of Exhibit B.

received your request, you have the right to seek dispute resolution services from an SEC FOIA Public Liaison or the Office of Government Information Services (OGIS)."

21. On August 16, 2021, the SEC advised in a letter that it had classified Empower Oversight as an "other use" requester, which Empower Oversight appealed. On September 23, 2021, the SEC granted Empower Oversight's appeal and clarified that Empower Oversight was a "news media" requestor for purposes of determining processing fees. *See* Ex. C at 2.

22. In that same September 23, 2021 letter, the SEC also stated: "The FOIA. . . precludes agencies from assessing duplication fees to news media requesters if the agency fails to meet the 20-day time limit for complying with a request and where no unusual or exceptional circumstances exist. **Because the FOIA Office has not complied with the 20-day time period for responding to your request (September 13, 2021) and because it has not informed you that unusual circumstances exist in processing your request, you cannot be assessed duplication fees at this juncture.**" *See id*.

23. In other words, the SEC explicitly admitted that it failed to comply with the 20-day time period and that it did not inform Empower Oversight that "unusual circumstances" exist, such that a delay may be warranted. 5 U.S.C. § 552(a)(4)(viii)(II)(aa); 17 C.F.R. § 200.80(d)(5).

24. Yet, to date, Empower Oversight has received no further correspondence from the SEC concerning its August 12, 2021 FOIA request as to six of the eight tracking numbers (the "Six Requests").[2]

25. Empower Oversight has been forced to expend resources to prosecute this action as to the Six Requests.

---

[2] As to just two of the eight Requests, 21-02536-FOIA and 21-02538-FOIA (in deferring to the eight separate tracking numbers assigned by the SEC upon receipt of Empower Oversight's August 12, 2021 Request), the SEC did reply to Empower Oversight in November 2021, indicating that the SEC had no responsive records. Therefore, this action focuses solely on the remaining Six Requests.

8

## CLAIMS FOR RELIEF

### Count I
### Failure to Comply with Statutory Deadlines in Violation of FOIA, 5 U.S.C. § 552(a)(6)

26. Plaintiff realleges and incorporates by reference each of the foregoing allegations, contained in paragraphs 1-25, as if fully set forth herein.

27. To date, Defendant has failed to respond to the Six Requests identified above.

28. More than 20 working days have passed since each of the Six Requests was received by the SEC, as confirmed in the August 13, 2021 letter. *See supra* ¶ 19; *see also* Ex. B.

29. FOIA requires the SEC to have provided a final determination within 20 working days of each of the Six Requests. The SEC may extend this 20-day period in the event of "unusual circumstances," as defined by 5 U.S.C. § 552(a)(6)(B)(iii), for a maximum of 10 working days, but must provide Empower Oversight with notice to do so. *See* 5 U.S.C. §§ 552(a)(4)(A)(viii)(II)(aa), 552(a)(6)(B)(ii); see also 17 C.F.R. §§ 200.80(d)(2), (d)(5).

30. The SEC failed to provide a final determination within 20 working days of the Request. *See* 5 U.S.C. § 552(a)(6). In fact, the SEC acknowledged to Empower Oversight that "the FOIA Office has not complied with the 20-day time period for responding to your request (September 13, 2021) and . . . has not informed you that unusual circumstances exist in processing." *See* Ex. C at 2.

31. The SEC has thus failed to timely make the statutorily required determination on Empower Oversight's Six Requests, in violation of FOIA. *See* 5 U.S.C. § 552(a)(6).

32. Empower Oversight's mission will be adversely affected by the SEC's continuing failure to timely render a final determination as to the Six Requests.

33. Empower Oversight has constructively exhausted all administrative remedies required by FOIA as to each of the Six Requests. *See* 5 U.S.C. § 552(a)(6)(C)(i).

34. Empower Oversight is entitled to declaratory and injunctive relief in connection with the SEC's unlawful failure to make a determination as to the Six Requests. *See* 5 U.S.C. § 552(a)(6).

## Count II
### Unlawful Withholding of Agency Records in Violation of FOIA, 5 U.S.C. § 552(a)(3)

35. Plaintiff realleges and incorporates by reference each of the foregoing allegations, contained in paragraphs 1-34, as if fully set forth herein.

36. FOIA requires Defendant to process records requests and promptly provide the requested records or the reasonably segregable portion of records not subject to a FOIA exemption. 5 U.S.C. § 552(a)(3)(B).

37. However, the SEC has neither provided Empower Oversight any responsive documents in response to any of the Six Requests, nor has it claimed that any responsive records are exempt from disclosure.

38. Empower Oversight is entitled to declaratory and injunctive relief in connection with the SEC's unlawful failure to timely produce responsive records as to the Six Requests. 5 U.S.C. § 552(a)(3)(B).

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff prays that this Court:

A. Declare that the SEC failed to make timely determinations on each of Empower Oversight's Six Requests, in violation of FOIA, 5 U.S.C. § 552(a)(6)(A)(i);

B. Declare that the SEC failed to promptly provide records responsive to each of Empower Oversight's Six Requests, in violation of FOIA, 5 U.S.C. § 552(a)(3);

C. Order the SEC to immediately conduct a reasonable search for all responsive records, as required by FOIA, 5 U.S.C. § 552(a)(3)(C);

D. Order the SEC to immediately provide determinations on each of Empower Oversight's Six Requests, as required by FOIA, 5 U.S.C. § 552(a)(6)(A)(i);

E. Order the SEC to promptly disclose to Empower Oversight all responsive, non-exempt records, as required by FOIA, 5 U.S.C. § 552(a)(3);

F. Award Empower Oversight its costs and reasonable attorneys' fees incurred in this action, pursuant to 5 U.S.C. § 552(a)(4)(E); and

G. Grant such other relief as the Court may deem just and proper.

December 8, 2021

Respectfully submitted,

*/s/ Michael J. Schrier*
Michael J. Schrier (VSB #65916)
HUSCH BLACKWELL LLP
750 17th Street, NW, Suite 900
Washington, DC 20006-4675
Tel. 202-378-2313
Fax 202-378-2319
michael.schrier@huschblackwell.com

Scott L. Glabe
HUSCH BLACKWELL LLP
235 E. High St., Suite 300
Jefferson City, MO 65101
Tel. 202-378-2396
Fax 292-378-2319
scott.glabe@huschblackwell.com

*Attorneys for Plaintiff Empower Oversight Whistleblowers & Research*