IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

EMPOWER OVERSIGHT                )
WHISTLEBLOWERS & RESEARCH,        )
                                 )
    Plaintiff,                   )
                                 )
    v.                           )    Civil Action No. 1:21-cv-1370 (RDA/WEF)
                                 )
UNITED STATES SECURITIES AND     )
EXCHANGE COMMISSION,             )
                                 )
    Defendant.                   )
_____  )

## MEMORANDUM OPINION AND ORDER

    This matter comes before the Court on Defendant's Motion for Summary Judgment. Dkt. 27. This Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter has been fully briefed and is now ripe for disposition. Having considered the Motion, Defendant's Memorandum in Support (Dkt. 28), Plaintiff's Opposition to the Motion (Dkt. 31), Defendant's Reply in Support of its Motion (Dkt. 33), and Plaintiff's Notice (Dkt. 34), this Court GRANTS-IN-PART and DENIES-IN-PART Defendant's Motion (Dkt. 27) for the reasons that follow.

## I. BACKGROUND

### A. Factual Background

    Although the parties dispute certain facts, the following facts are undisputed for the purposes of Defendant's summary judgment motion. Dkt. Nos. 28 at 2-9; 31 at 6-15; 33 at 6-7.[1]

---

[1] There are two principles that guide the Court in determining whether facts are undisputed.

On August 13, 2021, the SEC FOIA Office received a FOIA request from Empower Oversight. Dkt. 28 at 2 ¶ 1; *see* Dkt. 25-1 (FOIA request from Empower Oversight). That request had eight sub-parts, of which six are the subject of this underlying investigation. Dkt. 28 at 2 ¶ 1. Generally, the requests sought information about contacts that SEC personnel had with individuals from three entities: (1) the law firm of Simpson Thacher and Bartlett LLP; (2) the cryptocurrency organization Enterprise Ethereum; and (3) One River Asset Management. *Id.* The requests spanned communications from May 2017 through December 2020. *Id.*

**FOIA Request No. 21-02531-FOIA.**[2]  This request sought: "All records relating to communications from May of 2017 through December of 2020 between William Hinman and any personnel from Simpson Thacher, including calendar entries, notes, or emails between Mr. Hinman and any email address from the domain 'stblaw.com'" Dkt. Nos. 25-1 at 2-3; 28-1 (Declaration of Alexandra Verdi) ¶ 5.

Initially, the SEC didn't find any responsive records. It issued a "no records" response to the request on December 10, 2021. Dkt. 25 ¶ 27. The SEC then realized that it had used an "incorrect domain name for Simpson Thacher emails." Dkt. 28-1 ¶ 8; *see also* Dkt. 31-3 at 4 (search was for domain address using "stbllaw.com" rather than "stblaw.com").

---

First, if a party does not contest a fact or its underlying support, the Court can properly consider those facts. For instance, the Court treats any facts that are listed in a statement of undisputed facts and not specifically controverted by the opposing party as admitted. *Hayes v. Sotera Def. Sol's, Inc.*, No. 1:15-cv-1130, 2016 WL 2827515, at *2 (E.D. Va. May 12, 2016).

Second, Federal Rule of Civil Procedure 56(c) sets forth the specific ways a party *must* use to establish the undisputed (or disputed) nature of a material fact. A party must either: (1) cite to "particular parts of materials in the record," Fed. R. Civ. P. 56(c)(1)(A), or (2) show that the cited materials "do not establish the absence or presence of a genuine dispute, or that" no "admissible evidence" can be produced to "support the fact[,]" Fed. R. Civ. P. 56(c)(1)(B).

[2] For ease of reference, the Court adopts the government's tracking numbers for each FOIA request.

The SEC then corrected the error and had its Office of Information Technology "search for all emails that Mr. Hinman sent to or received from an email address with the domain '@stblaw.com' from May 1, 2017 to December 31, 2020 as well as provide Mr. Hinman's Outlook calendar." Dkt. 28-1 ¶ 9. The SEC searched for "responsive emails and calendar entries" by searching the records OIT provided using the search terms "Simpson Thacher," "STB," "Stblaw," "stblaw.com," and "Simpson." *Id.* ¶ 10.[3] SEC staff then reviewed the documents returned by those searches to "identify records responsive to the FOIA request" and any "information that fell under any FOIA exemptions." *Id.*

The searches resulted in various documents being released to Plaintiff. The SEC released two sets of documents, once on February 22, 2022, and again on June 15, 2022. *Id.* ¶ 14. The documents include (1) "1,053 pages of records consisting of emails and calendar entries between Mr. Hinman and personnel from Simpson Thacher" and (2) "56 pages of emails between Mr. Hinman and Simpson Thacher on which FOIA Office staff had sought Simpson Thacher's views." *Id.*; *see also* Dkt. Nos. 28-2; 28-3 (listing all documents released).

The SEC redacted or withheld some documents that it identified as responsive. First, the SEC staff "identified a small number of calendar entries reflecting appointments with personnel from Simpson Thacher" and redacted them "in part" under "FOIA exemption 6." Dkt. 28-1 ¶ 11. Second, the SEC believed that fifty-nine pages of documents might have been "exempt from disclosure pursuant to FOIA Exemption 4," asked for Simpson Thacher's "views on which

---

[3] Plaintiff claims to dispute this fact, which is set forth in Defendant's statement of undisputed facts. Dkt. 31 at 7-8, ¶ 4. It does the same with each fact relating to Defendant's efforts in responding to each FOIA request. *Id.* at 9-11 ¶¶ 7, 10, 13, 16, 19. But the basis for its purported "dispute" is that the agency did not make "reasonable efforts to search for records" responsive to each request. *E.g.*, *id.* at 7-8 ¶ 4. But that is not a dispute of fact—it is a legal argument. Accordingly, because Plaintiff has not disputed those facts in accordance with Federal Rule of Civil Procedure 56(c), the Court treats them as undisputed.

information … should be protected from disclosure under Exemption 4" and eventually withheld "certain information under Exemption 4." *Id.* ¶ 12.

Finally, although the request specifically targeted notes, the SEC in its investigation didn't search for notes in responding to Request -02531. According to the SEC, the request didn't "identify any subject matter or SEC activity that would allow SEC staff to know where to search for notes." *Id.* ¶ 13. And the SEC's own review of the responsive emails and calendar entries "did not identify any meetings or appointments with personnel from Simpson Thacher in which notes were reasonably likely to have been taken and preserved." *Id.*

**FOIA Request No. 21-02532-FOIA.** This request sought: "All records relating to communications from May of 2017 through December of 2020 between William Hinman and any personnel from the Enterprise Ethereum Alliance, including calendar entries, notes or emails between Mr. Hinman and any email address from the domain '@entethalliance.org[.]'" Dkt. 25-1 at 3.

In response, the SEC had OIT search for "all emails Mr. Hinman (using his SEC email) sent to or received from an email address with domain '@entethalliance.org' during the period of May 1, 2017 through December 31, 2020." Dkt. 28-1 ¶ 17. The SEC also searched Mr. Hinman's calendar entries using the search terms "Enterprise Ethereum," "entethalliance.org," "Ethereum," and "Enterprise." *Id.* ¶ 18. Neither search identified any emails or calendar entries. *Id.* ¶¶ 17-18. As with Request -02531, the SEC did not search for notes. *Id.* ¶ 19.

**FOIA Request No. 21-02533-FOIA.** This request sought: "All records relating to communications, including calendar entries, notes or emails between Mr. Hinman and any personnel in the SEC's Office of the Ethics Counsel regarding Mr. Hinman's continued payments from Simpson Thacher while employed at SEC, his potential recusals or conflicts related to his

prior or future employment at Simpson Thacher, as well as his discussions and negotiations with Simpson Thacher regarding rejoining the firm." Dkt 25-1 at 3.

The SEC responded differently depending on the medium it was searching. First, the SEC searched for "all emails between Mr. Hinman's SEC and personal email addresses and 23 Office of the Ethics Counsel ("OEC") employees during the period of January 1, 2017 through December 31, 2020." Dkt. 28-1 ¶ 22. The 23 individuals in the OEC were "all individuals who worked" at the OEC "during Mr. Hinman's tenure at the SEC." *Id.* SEC staff reviewed "each of the documents returned by [the] search to identify records responsive to the FOIA request" and any information that "fell under any FOIA exemptions." *Id.* Second, The SEC searched for calendar entries by searching them using the terms "OEC" and "Ethics" and the "last names of SEC staff identified from responsive records from the email search . . . ." *Id.* ¶ 24. Third, the SEC searched for notes by "asking current OEC staff identified from responsive records from the email search to perform a search for any responsive notes and by asking current OEC staff to check departed OEC staff files for any responsive notes." *Id.* ¶ 25.

While the SEC didn't find any responsive calendar entries or notes, *id.* ¶¶ 24-25, it did find responsive documents. In all, the SEC released two sets of documents, once on March 25, 2022, and once on June 15, 2022. *Id.* ¶ 26. This included: "(1) 196 pages of emails and attachments between William Hinman and OEC, and (2) 123 pages of emails and attachments between Mr. Hinman and OEC." *Id.* The documents that were released to the SEC were "redacted in part pursuant to FOIA Exemptions 4, 5, and 6." *Id.* And ten pages of documents were withheld under FOIA Exemption 6. *Id. See also* Dkt. Nos. 28-4; 28-5 (listing of documents released and description of information withheld in full or in part).

**FOIA Request No. 21-02534-FOIA.** This request sought: "All records relating to communications from May of 2017 through January of 2021 between Marc Berger and any personnel from Simpson Thacher, including calendar entries, notes or emails between Mr. Berger and any email address from the domain '@stblaw.com.'" Dkt. 25-1 at 3.

Once again, the SEC employed different search methods for emails and calendar entries. As to emails, the SEC searched "Mr. Berger's SEC email address for any emails he sent to or received from a Simpson Thacher email address (using the Simpson Thacher email domain '@stblaw.com')" between May 1, 2017 through January 31, 2021. Dkt. 28-1 ¶ 28. As to calendar entries, the SEC searched the calendar entries using the search terms "Simpson Thacher," "STB," "stblaw.com," "Simpson," and "Osnato." *Id.* ¶ 29. The SEC then reviewed the documents returned by those searches to (1) identify responsive documents; and (2) determine whether any information fell under a FOIA exemption. *Id.* ¶ 30. In deciding whether calendar entries were responsive, the SEC only treated those entries from August 1, 2020 through January 31, 2021 as "agency records" because before that time, Mr. Berger was a "Regional Director" of the SEC's New York Office and only shared his calendar with an administrative assistant. *Id.* ¶ 31.

The SEC identified various responsive documents. It released three sets of documents to Plaintiff on February 16, 2022, April 7, 2022, and May 25, 2022. *Id.* ¶ 34. This included: "(1) 46 pages of records consisting of emails and attachments between Marc Berger, Simpson Thacher personnel, and others[;] (2) 1 page consisting of an email between Mr. Berger and Simpson Thacher personnel[;] and (3) four pages of records consisting of an email and attachment between Mr. Berger, Simpson Thacher, and others." *Id.* The SEC redacted those documents "in part" under FOIA Exemptions 4, 6, and 7(C) and withheld four pages of material under FOIA Exemption 6.

*Id.   See also* Dkt. Nos. 28-6; 28-7; 28-8 (listing of documents released and description of information withheld in full or in part).

Similar to its approach in responding to Request -02531, although Request -02534 specifically targeted notes, the SEC didn't search for notes.  According to the SEC, the request didn't "identify any subject matter or SEC activity that would allow SEC staff to know where to search for notes." *Id.* ¶ 33.  And the SEC's own review of the responsive emails and calendar entries "did not identify any meetings or appointments with personnel from Simpson Thacher in which notes were reasonably likely to have been taken and preserved." *Id.*

**FOIA Request No. 21-02535-FOIA.**   This request sought "All records relating to communications from May of 2017 through January of 2021 between Marc Berger and any personnel from the Enterprise Ethereum Alliance, including calendar entries, notes or emails between Mr. Berger and any email address from the domain '@entethalliance.org.'" Dkt. 25-1 at 3.

The SEC searched for responsive documents by searching "for all emails Mr. Berger (using his SEC email address) sent to or received from an email address with the domain 'entethalliance.org' during the period of May 1, 2017 through January 31, 2021." Dkt. 28-1 ¶ 36. The SEC searched for responsive calendar entries by searching the entries using the search terms "Enterprise Ethereum," "entethalliance.org," "Ethereum," and "Enterprise." *Id.*  As with request -02534, the SEC did not consider entries between May 2017 and July 2017 to be "agency record[s]." *Id.* ¶ 37.  Neither search identified any responsive emails or calendar entries. *Id.* ¶¶ 37-38.  Parallel to its approach to Requests -02531 and -02532, the SEC did not search for notes. *Id.* ¶ 38.

**FOIA Request No. 21-025357-FOIA.**  This request sought "All records relating to communication from May of 2017 through December of 2020 between Jay Clayton and personnel from One River Asset Management, including calendar entries, notes or emails between Mr. Clayton and any email address from the domain '@oneriveram.com[.]'"  Dkt. 25-1 at 3.

In searching its records for documents responsive to Plaintiff's Request, the SEC took a similar approach as it took to the other requests.  First, it searched for emails by searching Clayton's internal and public-facing email addresses for all emails "sent to or received from an email address from the domain '@oneriveram.com'" from May 1, 2017 through December 31, 2020.  Dkt. 28-1 ¶ 41.  Second, it also searched Clayton's "correspondence files" for "correspondence to or from personnel at One River Asset Management.  *Id.* ¶ 42.  Third, it searched for calendar entries by (1) reviewing Clayton's public calendar; and (2) searching Clayton's Outlook calendar using the terms "One River," "River Asset," and "oneriveram.com."  *Id.* ¶ 43. Finally, and for the same reasons it did not search notes in response to Requests -02531, -02532, and -02535, the SEC did not search for notes.  *Id.* ¶ 44.  The SEC ended up finding no responsive records to Request -02537.  *Id.* ¶ 45.

B. Procedural Background

Plaintiff filed its original Complaint on December 8, 2021.  Dkt. 1.  At that time, the SEC had not produced any documents in response to Plaintiff's FOIA request, as it began doing so in February of 2022.  Dkt. 28-1 ¶¶ 14, 34.  While the parties engaged in settlement discussions from January through March of 2022, they were unable to come to an agreement.  *Id.* ¶ 51.  Plaintiff completed its final release of documents on August 30, 2022.  *Id.* ¶ 49.

In the meantime, Plaintiff had filed an Amended Complaint on August 3, 2022.  Dkt. 25. The SEC answered that Amended Complaint on August 17, 2022, and subsequently filed a Motion

8

for Summary Judgment on August 31, 2022.  Dkt. 27.  Plaintiff opposed that Motion on October 3, 2022, Dkt. 31, and the SEC replied in support of its Motion for Summary Judgment on October 11, 2022, Dkt. 33.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is appropriate only if the record shows 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Hantz v. Prospect Mortg., LLC*, 11 F. Supp. 3d 612, 615 (E.D. Va. 2014) (quoting Fed. R. Civ. P. 56(a)).

"A material fact is one 'that might affect the outcome of the suit under the governing law.' A disputed fact presents a genuine issue 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'"  *Id.* at 615-16 (quoting *Spriggs v. Diamond Auto. Glass*, 242 F.3d 179, 183 (4th Cir. 2001)).  The moving party bears the "initial burden to show the absence of a material fact."  *Sutherland v. SOS Intern., Ltd.*, 541 F. Supp. 2d 787, 789 (E.D. Va. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  "Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists."  *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

On summary judgment, a court reviews the evidence in the light most favorable to the non-moving party.  *McMahan v. Adept Process Servs., Inc.*, 786 F. Supp. 2d 1128, 1134-35 (E.D. Va. 2011) (citing *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003)).  This is a "fundamental principle" that guides a court as it determines whether a genuine dispute of material fact within the meaning of Rule 56 exists.  *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 570 (4th Cir. 2015).  "[A]t the summary judgment stage[,] the [Court's] function is not [it]self to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue

9

for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

A factual dispute alone is not enough to preclude summary judgment.  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48.  And a "material fact" is one that might affect the outcome of a party's case.  *Id.* at 248; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).  The substantive law determines whether a fact is considered "material," and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson*, 477 U.S. at 248; *Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001).  A "genuine" issue concerning a "material fact" arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the non-moving party's favor.  *Anderson*, 477 U.S. at 248.

### III. ANALYSIS

There are two principal claims in Empower Oversight's lawsuit and the SEC contends that it should prevail on both of them.  First, Plaintiff challenges the timeliness of the SEC's production and the SEC argues that any timing issues have (1) been mooted by the SEC's eventual production; and (2) do not form any basis for relief.  Second, while Plaintiff argues that the SEC conducted inadequate searches in response to their FOIA request, the SEC fundamentally disagrees.

The parties also briefed a third issue: whether the SEC's redactions were proper.  But, and as the SEC noted in its Summary Judgment Memorandum, nothing in Plaintiff's Amended Complaint challenges the redactions.  There are three counts in the Amended Complaint: (1) "Failure to Comply with Statutory Deadlines in Violation of FOIA, 5 U.S.C. § 552(a)(6)[,]" Dkt. 25 at 12; (2) "Unlawful Withholding of Agency Records in Violation of FOIA, 5 U.S.C. § 552(a)(3)[,]" *id.* at 13; and (3) "Failure to Conduct a Search Reasonably Calculated to Locate All

Responsive Records, in Violation of FOIA, 5 U.S.C. § 552(a)(3)[,]" *id.* at 14.  On their face, the first and third counts do not challenge the redactions.

The only count that might suggest a redactions theory is Count II.  However, it is clear from Plaintiff's own allegations that Count II is not aimed at the redactions in the produced documents.  In Plaintiff's own words, the gravamen of that claim is that "[t]he SEC has withheld responsive records from Empower Oversight because the agency failed to conduct a reasonable search for records" in response to the FOIA requests.  *Id.* ¶ 48.  That makes it essentially the same claim as Count III, which also challenges the reasonableness of the SEC's searches.  Moreover, the only relief that Plaintiff seeks is the further production of documents that were not covered by the SEC's original searches; it does not seek un-redaction or further production of previously redacted documents.  *See id.* at 15 (Prayer for Relief, asking this Court to order a reasonable search and disclose additional records).  All of this reveals that there is no "short and plain statement of [a] claim" that the SEC improperly redacted the documents it did produce.  Fed. R. Civ. P. 8(a)(2).  Because it is axiomatic that a Plaintiff cannot add claims through briefing, the Court will not address any claim related to the purported issues with the SEC's redactions.  *See, e.g.*, *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 617 (4th Cir. 2009) (declining to address argument that was not in complaint and raised for first time on appeal); *Price v. MRS Assocs., Inc.*, No. 7:13-cv-13-D, 2014 WL 2930723, at *4 n.1 (E.D.N.C. June 27, 2014) (declining to address claims that were added "via summary-judgment briefing").  This approach is consistent with myriad other courts who have declined to address redaction-related gripes that were not specifically set forth in the FOIA complaint.  *See, e.g.*, *Kidd v. Dep't of Interior*, 19 F.3d 1440 (table), 1994 WL 65312, at *3 (9th Cir. Mar. 1, 1994) (declining to address redactions when plaintiff's FOIA complaint "did not challenge the propriety of the redactions"); *Competitive Enterprise Inst. v. E.P.A.,* 153 F.

Supp. 3d 376, 382-83 (D.D.C. 2016) (dismissing case because plaintiff did not bring a claim pertaining to redactions, even when plaintiff had referenced "heavy redactions[,]" because plaintiff "did not ask the court to *do* anything about those redactions" (emphasis added)).

### A. The SEC's Untimely Production

It is undisputed that the SEC did not meet the time impositions that the FOIA statute provides. Under the statute, an agency that receives a FOIA request must issue a determination within 20 days of receiving the request. 5 U.S.C. § 552 (a)(6)(A)(i). Nowhere in Defendant's papers does it contest that it flouted that deadline; indeed, it impliedly concedes that factual point. Accordingly, the Court treats that fact as undisputed.

Defendant does, however, contend that any claim related to the untimeliness of its response to Plaintiff's FOIA request is moot. According to the SEC, the timeliness claim is "not a basis for relief" as "judicial relief in FOIA cases is limited to ordering the production of documents." Dkt. 28 at 10. Defendant points to case law that stands for the proposition that "once documents are produced by agencies in FOIA claims, any claims based on the purported failure of an agency to timely respond to requests are rendered moot." *Id.* (collecting cases).

Plaintiff, on the other hand, disagrees. It argues that Defendant's position is effectively positing that "statutory deadlines do not matter." Dkt. 31 at 17. Because "there is still a live controversy" in this case—namely, the adequacy of the SEC's search—Plaintiff argues that the case is not moot. *Id.* at 17-18. It further argues that this Court is empowered to "declare that the SEC failed to comply with FOIA's statutory deadlines[,]" meaning that its claim is not moot. *Id.* at 18. Finally, Plaintiff argues that even if this argument were considered "moot," it is a situation that the Court can nonetheless review because the SEC's actions are "capable of repetition, yet evading review." *Id.*

The Court agrees with Defendant on this issue.  Many courts across jurisdictions have held that a timeliness claim pursuant to 5 U.S.C. § 552 (a)(6)(A) is moot "[o]nce an agency has made its final determination."  *Muttitt v. Dep't of State*, 926 F. Supp. 2d 284, 296-97 (D.D.C. 2013); *see Sabra v. United States Customs and Border Protection*, No. 20-681, 2021 WL 796166, at *5 (D.D.C. Mar. 2, 2021) (holding that a declaratory judgment regarding agency's lack of timeliness was inappropriate given the fact that the agency had made a final determination); *Rocky Mtn. Wild, Inc. v. United States Bureau of Land Mgmt.*, No. 16-cv-3171-KLM, 2020 WL 12675644, at *4 (D. Colo. Sept. 30, 2020) (denying claim based on agency's failure to meet 20-day deadline as moot); *Worsham v. United States Dep't of the Treasury*, No. ELH-12-2635, 2013 WL 5274358, at *10 (D. Md. Sept. 17, 2013) (disregarding untimeliness of agency production under FOIA statute because agency had responded to request).

Contrary to what Plaintiff argues, for this inquiry, it does not matter that there is still a "live controversy" over whether the SEC conducted adequate searches in response to Plaintiff's FOIA requests.  There is a difference between Plaintiff's claims here—which is that the SEC's searches were *incomplete*—and what is relevant to the timeliness inquiry—whether the SEC's determination was *final*.  Here, it is undisputed that the SEC has issued a final determination in response to Plaintiff's FOIA requests.  *See* Dkt. 28-1 ¶ 49 (Verdi Declaration, stating that Defendant completed its release of documents on August 30, 2022.  Because that determination is final, and Defendant avers that "[it has] released all-non exempt documents," there is no "basis for a claim for relief" rooted in the untimely disclosure.  *Rocky Mtn. Wild, Inc.*, 2020 WL 1267644 at *4-5; *see also Ocasio v. United States Dep't of Justice*, 70 F. Supp. 3d 469, 476-77 (D.D.C. 2014) (holding that FOIA plaintiff could not challenge the timeliness of agency's response, "as 'the FOIA does not create a cause of action for an agency's untimely response to a FOIA request

. . . .'" (quoting *Bangoura v. United States Dep't of Army*, 607 F. Supp. 2d 134, 143 (D.D.C. 2009)).

Essentially, what Plaintiff seeks is a declaration from this Court that is unaccompanied by any relief, and such a declaration would run counter to mootness principles. The "sole penalty" for failure to comply with FOIA's timing provisions is "that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court." *Am. Ctr. for Law and Just. v. United States Dep't of State*, 249 F. Supp. 3d 275, 283 (D.D.C. 2017) (cleaned up) (quoting *Citizens for Resp. & Ethics in Wash. v. F.E.C.*, 711 F.3d 180, 189 (D.C. Cir. 2013)). Here, the SEC has not argued that this Court is precluded from evaluating this case based on a lack of exhaustion, meaning that there is no penalty or relief available to Plaintiff. As a result, the timeliness claim is moot. *See Knox v. Serv. Employees Intern. Union, Local 1000*, 567 U.S. 298, 307 (2012) (stating that claims become moot "when it is impossible for a court to grant any effectual relief whatever to the prevailing party" (cleaned up)); *Stop Reckless Economic Instability Caused by Democrats v. F.E.C.*, 814 F.3d 221, 229 (4th Cir. 2016) (recognizing that cases are moot when the "parties lack a legally cognizable interest in the outcome" (citing *Chafin v. Chafin*, 568 U.S. 165, 172 (2013))).

Finally, this is not a claim that is "capable of repetition, yet evading review," such that this Court can ignore the mootness of the FOIA timeliness claim. Dkt. 31 at 18. That doctrine allows for review of potentially moot claims where "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975). The second element requires a party to present a "demonstrated probability that the same controversy will recur involving the same complaining

party." *Murphy v. Hunt*, 455 U.S. 478, 482 (1982).  Plaintiff has pointed to nothing more than the fact that it may continue to bring FOIA claims in this district; in no way does that show a "demonstrated probability" that it will once again submit claims that the SEC will respond to without complying with the FOIA timing requirements.  Indeed, Plaintiff has not pointed to any "policy or practice that will impair [its] lawful access to information in the future," which, as it acknowledges, is the standard it must meet to overcome the fact that the timeliness claim is moot. *Payne Enterprises, Inc. v. United States*, 837 F.2d 486, 491 (D.C. Cir. 1988); Dkt. 31 at 18 (citing *Payne Enterprises*, 837 F.2d at 491).

The Court thus finds that any claims related to the timeliness of the SEC's productions are moot and grants summary judgment to Defendant on Count I.

### B. The Adequacy of the SEC's Searches

The heart of Plaintiff's Amended Complaint, though, is a challenge to the adequacy of each of the SEC's searches.  While there are six different searches identified in the Complaint, Plaintiff only challenges the adequacy of four of them: Requests -02531, 02532, -02535, and -02537.  Dkt. 25 at 13, 14, 15.  And it has the same issues with how the SEC responded to each request.  Plaintiff argues that for each search, the SEC "unreasonably narrowed the scope of Empower Oversight's request." Dkt. 31 at 20.  According to Plaintiff, the searches are facially broad, seeking "all records relating to communications" between certain people and/or entities.  *Id.* at 21.  However, despite that broad language, because Plaintiff used the word "including" to set forth examples of the types of documents it was seeking, Defendant limited its searches to the examples identified in the "including" clause.  *Id.* at 21-22.

Defendant contends that its searches were adequate in light of Plaintiff's requests.  According to the SEC, it "performed searches reasonably calculated to identify the relevant

documents sought in each sub-part of Plaintiff's FOIA request."  Dkt. 28 at 13.  It addresses Plaintiff's argument that the word "including" is not limiting by stating that if Plaintiff "sought something more specific in its request, the onus was on Plaintiff to submit a request to that effect." *Id.* at 14.

The Court agrees with Plaintiff and finds that Defendant is not entitled to Summary Judgment on Counts II and III as to Requests -02531, -02532, -02535, and -02537 for two independent reasons: (1) the SEC's supporting affidavit is insufficient in light of the governing FOIA principles; and (2) the SEC's searches were not adequate, given the text of Plaintiff's requests.

First, the Court examines the SEC's affidavit.  An agency's affidavit should be "reasonably detailed, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials . . . were searched so as to give the requesting party an opportunity to challenge the adequacy of the search."  *Ethyl Corp. v. E.P.A.*, 25 F.3d 1241, 1246-47 (4th Cir. 1994).  While it is true that this Court affords the affidavit a presumption of good faith, they still must be "relatively detailed" and "nonconclusory."  *Virginia-Pilot Media Cos., LLC v. Dep't of Justice*, 147 F. Supp. 3d 437, 444 (E.D. Va. 2015).  In this case, the affidavit describes the searches that the agency conducted.  *See, e.g.*, Dkt. 28-1 at 4-6 (Verdi Declaration, describing the processes the SEC undertook to search for documents responsive to Request -02531); *see also id.* at 6-13 (same for requests -02532, -02535, and -02537).  Moreover, it also explains why the SEC cannot search personal email accounts.  *Id.* at 14-15.  However, those are the only two issues the affidavit addresses.

The limited nature of the SEC's declaration here renders it inadequate for Requests -02531, -02532, -02535, and -02537.  To be "relatively detailed[,]" an agency's explanation of its search

must "reasonably explain why it selected certain search terms and rejected obvious alternatives." *The Few, the Proud, the Forgotten v. United States Dep't of Veterans Aff.*, 254 F. Supp. 3d 341, 356 (D. Conn. 2017); *see Boundy v. USPTO*, No. 1:21-cv-1366, 2023 WL 2567350, at *4 (E.D. Va. Mar. 17, 2023) (stating that FOIA affidavits must be "reasonably detailed, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched" (cleaned up)).  In this case, the affidavit does not explain why, for each search, the SEC limited its initial search to emails the targeted SEC employee sent to a specific email domain.

For example, for Request -02531, the Verdi Declaration states that the SEC initially "searched for all emails Mr. Hinman . . . sent to or received from an email address with the domain @stblaw.com, from May 1, 2017, to December 31, 2020," and then goes on to describe how the agency further culled those records using additional search terms.  Dkt. 28-1 ¶¶ 9-10.  Nothing in the affidavit explains why the initial search was limited to emails "sent to or received from an email address with the domain @stblaw.com" even though the Request sought "*[a]ll* records relating to communications from May of 2017 through December of 2020 between" Hinman and Simpson Thacher employees . . . ."  *Id.* ¶ 5.  The same is true for the Verdi Declaration's description of the initial search addressing every other request aside from Request -02533.  *Id.* ¶¶ 16-18, 27-29, 35-37, 40-42.  Because the initial searches on their face *only* addressed a portion of Requests -02531, -02532, -02535, and -02537, the agency must "at minimum, . . . provide some explanation in its affidavit[]" to explain that "patently obvious gap[] and disparit[y][.]"  *Brennan Ctr. for Just. at N.Y. Univ. Sch. Of Law v. United States Immigration and Customs Enforcement*, 571 F. Supp. 3d 237, 246 (S.D.N.Y. 2021).  But the affidavit has provided no "logical explanations" why its initial search addressed only a portion of Plaintiff's request, and thus it has not "evince[ed] a good

17

faith effort to design a comprehensive search." *Imm. Def. Proj. v. United States Imm.*, 208 F. Supp. 3d 520, 527 (S.D.N.Y. 2016). Because there is no "discernable reason" for the agency's choice to forgo other searches that would address the Plaintiff's request, the declaration is deficient. *See James Madison Proj. v. Dep't of State*, 235 F. Supp. 3d 161, 169 (D.D.C. 2017) (declaration was not sufficient to show adequacy of government search when reasoning undergirding government search decisions needed to be explained "more clearly").

Because the SEC's supporting affidavit is insufficient as to Requests -02531, -02532, -02535, and -02537, it is not entitled to summary judgment on Counts II and III as to those Requests. *See Wickwire Gavin, P.C. v. Def. Intel. Agency*, 330 F. Supp. 2d 592, 596-98 (E.D. Va. 2004) (denying summary judgment to agency due to insufficient declaration); *Oglesby v. Dep't of the Army*, 920 F.2d 57, 67-68 (D.C. Cir. 1990) (reversing district court's grant of summary judgment due to lack of detail in affidavit); *Am. for Fair Treatment v. USPS*, __ F. Supp. 3d. __, 2023 WL 2610861, at *7 (D.D.C. Mar. 23, 2023) (finding explanation of search to be inadequate when affidavit did not "include all of the necessary information").[4]

Second, the Court examines the adequacy of the SEC's searches. The government bears the burden of showing its searches were reasonable in response to Plaintiff's FOIA requests. *See*

---

[4] The Court agrees with Defendant's point that "an agency is not required to comply with a request so broad that would impose an unreasonable burden upon the agency." *James Madison Proj. v. C.I.A.*, No. 1:8-cv-1323, 2009 WL 2777961, at *3 (E.D. Va. Aug. 31, 2009). However, there is nothing in the record that indicates that Defendant told Plaintiff its searches were unreasonably broad (aside from its decision to not search notes), nor has Defendant argued that to this Court. Instead, it has only argued that its searches were adequate in light of the requests submitted by Plaintiff, and so the Court evaluates the arguments Defendant has set forth. Because Defendant has not argued that a more expansive search would constitute an unreasonable burden, the Court does not address that issue. *See Ctr. for Popular Democracy v. Bd. of Governors of Fed. Reserve Sys.*, No. 16-cv-5829, 2019 WL 3207829, at *7 (E.D.N.Y. July 16, 2019) (recognizing that the burden of "showing that the use of additional and obvious search terms would be unreasonable" is on the government).

*Ethyl Corp.* 25 F.3d at 1248 (indicating that the government agency has the "burden of showing that it conducted an adequate search"). Pursuant to the FOIA statute, the "agency is under a duty to conduct a 'reasonable' search for responsive records using methods which can be reasonably expected to produce the information requested to the extent they exist." *Wickwire Gavin*, 330 F. Supp. 2d at 596 (E.D. Va. 2004).

To be sure, agencies need not conduct backbreaking inquiries to find every possible responsive document. A search must be "reasonably calculated to uncover all relevant documents." *Rein v. USPTO*, 553 F.3d 353, 362 (4th Cir. 2009). And a search "need not be perfect, only adequate, and adequacy is measured by the reasonableness of the effort in light of the specific request." *Meeropol v. Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986). At the end of the day, this Court's focus is the actual searches that Defendant conducted, without regard to the results of those searches. *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003).

Just like its affidavit, the SEC's searches are inadequate given the plain language of Requests -02531, -02532, -02535, and -02537. The SEC claims that it hewed to the language in Plaintiff's FOIA's requests, implying that the content of Plaintiff's requests was limited to emails sent to specific domain names. *See* Dkt. 28 at 14 (arguing that Plaintiff's contention that the requests were not limited by domain name emails is "belied by the language of Plaintiff's FOIA request"). The Court does not find this persuasive, as Defendant's argument rests on the premise that the word "including" means something that it does not. Take, for example, Request -02531, which asks for "[a]ll records relating to communications from May of 2017 through December of 2020 between William Hinman and any personnel from Simpson Thacher, including calendar entries, notes, or emails between Mr. Hinman and any email address from the domain '@stblaw.com.'" Dkt. 28-1 ¶ 5. The SEC's searches only covered the portion of the request

coming after the word "including," as it searched emails and calendar entries between Mr. Hinman and emails from the domain @stblaw.com. *Id.* ¶¶ 9-11. But, as the Supreme Court has made clear time and again, the word "including" does not limit what precedes it in such a way. *See Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994) (explaining that the word "including" indicates "the illustrative and not limitative function of the examples given" (cleaned up)); *Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95, 100 (1941) (defining the term "including" to not be an "all-embracing definition" but instead to "connote[] simply an illustrative application of [a] general principle"). As a result, it was unreasonable for the SEC to wholly ignore the first part of Requests -02531, -02522, --02535, and -02537 in favor of only searching for documents that addressed the illustrative examples Plaintiff set forth in the FOIA Request. *See Inter-Cooperative Exchange v. Dep't of Commerce*, 36 F.4th 905, 912 (9th Cir. 2022) (holding that searches were inadequate when they "completely disregarded half of [plaintiff's] FOIA request").

In other words, Defendant's searches are not reasonable given the content of Requests -02531, -02522, -02535, and -02537. Defendant has offered no explanation why it confined its search to only a part of Plaintiff's request, which indicates that the search was not conducted "in a manner reasonably certain to uncover all responsive records." *Carter, Fullerton, & Hayes v. F.T.C.*, No. 1:12-cv-448, 2013 WL 653288, at *7 (E.D. Va. Feb. 21, 2013). That search, which did not encompass the plain language of the request, is thus insufficient. *See Wild Horse Freedom Fed. v. Dep't of the Interior, Bureau of Land Mgmt.*, 316 F. Supp. 3d 315, 319 (D.D.C. 2018) (search that only covered *some* briefings was insufficient when FOIA request asked for *all* briefings).

Because the Court finds that the SEC's searches addressing Request Nos. -02531, -02532, -02534, -02535, and -02537 were not "reasonably calculated to uncover all relevant documents"

20

they Court finds them to be inadequate, and it is it is not entitled to summary judgment on Counts II and III as to Requests -02531, -02532,  -02535, and -02537.  *Rein*, 553 F.3d at 362.

IV. CONCLUSION

For the reasons set forth above, it is hereby ORDERED that Defendant's Motion for  Summary Judgment (Dkt. 28) is GRANTED-IN PART; and it is

FURTHER ORDERED that the parties are to submit a joint status report no later than July 19, 2023.

The Clerk is directed to enter judgment on Count I for Defendant pursuant to Federal Rule of Civil Procedure 58.

Alexandria, Virginia
July 5, 2023

_____ /s/
Rossie D. Alston, Jr.
United States District Judge